## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH
## CIVIL ACTION NO. 5:05CV-P197-R

**DOUGLAS L. ETHERIDGE, JR.**                                                                 **PLAINTIFF**

v.

**BILL ADAMS**                                                                                **DEFENDANT**

### OPINION

The plaintiff filed this civil rights action under 42 U.S.C. § 1983 ("§ 1983"). The complaint is before the court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the court will dismiss this action.

### I. SUMMARY OF CLAIMS

The plaintiff, Douglas L. Etheridge, Jr., is an inmate confined at the McCracken County Jail. He brings this civil rights action against Jailer Bill Adams in his official capacity, charging him with depriving him of due process. Specifically, the plaintiff claims that he was wrongly charged and convicted of possessing tobacco which resulted in his losing work release privileges. The plaintiff complains that because he cannot participate in the program, he cannot earn credits toward early release. He also complains that the defendant refuses to transfer him to another institution.

### II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.,* 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted, "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Therefore, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

### III.  ANALYSIS

By claiming that he was deprived of his work release status in violation of the Fourteenth Amendment's due process protections, the plaintiff essentially claims that he possesses a protected liberty interest in participating in the work release program.[1]  While no State may "deprive any person of life, liberty, or property, without due process of law," the Supreme Court has held that "only a limited range of interests fall within this provision."  *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled on other grounds by Sandin v. Connor*, 525 U.S. 472 (1995) (citation omitted).  Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States.  *Meachum v. Fano*, 427 U.S. 215, 223-227 (1976).  The court will determine whether the plaintiff possesses a protected liberty interest in work release that has been created by the Due Process Clause itself or the Commonwealth's laws.

The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner.  *Meachum*, 427 U.S. at 224.  For example, a transfer to a more secure penal facility, while more burdensome on a prisoner, is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Id.*  In general, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed on him . . . the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  *Kentucky Dep't of Corr. v.*

---

[1]While the plaintiff claims that he was deprived of the Eighth and Fourteenth Amendments' due process protection, it is the Fourteenth Amendment that provides such protections.  The court will review his claim accordingly.

*Thompson*, 490 U.S. 454, 460-61 (1989) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

With respect to the claim before this court, the Sixth Circuit Court of Appeals has specifically held that the Fourteenth Amendment's Due Process Clause does not create a protected liberty interest in participating in prison employment, including work release. *Codd v. Brown*, 949 F.2d 879 (6th Cir. 1991) (holding that prisoners have no inherent due process interest in work release); *see also Hert v. Lewis*, No. 94-6097, 1995 WL 234662 (6th Cir. Apr. 20, 1995) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)).  Because the Due Process Clause itself has not created a protected liberty interest in the plaintiff's continued participation in work release, the court will examine whether that liberty interest has been created by the Commonwealth of Kentucky.

To determine whether the Commonwealth of Kentucky has created a protected liberty interest in work release, the court's analysis is governed by the Supreme Court's decision in *Sandin v. Connor*, 515 U.S. 472, 484 (1995).  There, the Supreme Court addressed whether Hawaii had created a liberty interest in freedom from disciplinary segregation to which due process protections attached.  In reaching a conclusion in the negative, the Supreme Court held that state created liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 514 U.S. at 484 (internal citations omitted).

4

The Sixth Circuit has not yet issued a published decision applying *Sandin* to a case in which a prisoner challenges the revocation of his work release privileges. It has, however, issued two unpublished decisions concluding that no liberty interest is implicated in a denial of or the removal from a work release program. *Thompson v. Thompson*, No. 96-6352, 1998 WL 211775 (6th Cir. Apr. 23, 1998) (holding that "removal from the work release program was not an atypical and significant hardship"); *Little v. Campbell*, No. 96-5515, 1997 WL 242050 (6th Cir. May 8, 1997) (holding that the "[d]enial of placement in a work release center does not implicate a liberty interest protected by the Due Process Clause because it is not a significant and atypical hardship").

Other circuit courts have likewise rejected the contention that an inmate possesses a protected liberty interest in work release. *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (holding that an inmate, who was denied permission to participate in work release, has no constitutionally protected liberty interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates"); *Asquith v. Department of Corrections,* 186 F.3d 407 (3d Cir. 1999) (holding that "Asquith's [termination from work release] and return to prison did not impose [an] atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest"); *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996) (holding that an inmate who was summarily removed from a work release program and sent to a medium security prison after having successfully participated in work release for four years did not possess a protected liberty interest in remaining in work release because confinement within the prison walls of the medium security prison was an ordinary incident of

prison life); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996) (holding that the revocation of work release status imposed neither an atypical nor significant deprivation, reasoning that the inmate was returned to the same facility from which he had left upon being granted work release several months before).[2]

In light of the foregoing, this court concludes that the plaintiff does not possess a state-created liberty interest in his continued participation in work release. In other words, revoking his work release status and requiring him to remain incarcerated did not impose "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Accordingly, he failed to state a cognizable claim.

As for the plaintiff's claim that he has a protected liberty interest in being transferred to a different institution, his claim is without merit. A prisoner has no constitutional right to be confined in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). And the transfer of prisoners in Kentucky is within the sound discretion of the Commonwealth. *See* Ky. Rev. St. Ann. §§ 196.070 and 197.065

---

[2]The Second Circuit, however, has recognized a protected liberty interest in the participation in a work release program. *Kim v. Hurston*, 182 F.3d 113 (2d Cir. 1999). In reaching its conclusion, the court relied on *Young v. Harper*, 520 U.S. 143, 152-53 (1997). In *Young*, the Supreme Court held that placement in a preparole program could not be revoked without due process protections. The Court noted the following characteristics of preparole release in determining that it was dissimilar to incarceration: "[h]e kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment." *Id.* at 148. In finding that Kim possessed a protected liberty interest, the Second Circuit noted that the work release program in which Kim participated was indistinguishable from traditional parole or from the program considered in *Young*. Kim was allowed to live at home and work on the job. The revocation of her work release status imposed a "serious hardship" on her, and she was entitled to minimal due process protections. *Id.* at 118. Here, the facts are distinguishable from *Kim* because the plaintiff was not living in conditions similar to that of a parolee or preparolee. He remained incarcerated and performed work within the institution. He did not maintain his own residence or live a life generally free of the constraints of incarceration.

Because the plaintiff failed to state a cognizable claim, by separate order the court will dismiss this action.

Date: December 1, 2005

*Thomas B. Russell*

Thomas B. Russell, Judge
United States District Court

cc: Plaintiff *pro se*
Defendant
4413.002